761 S.E.2d 231

**In the Interest of STEPHEN W., a Juvenile Under the Age of Seventeen, Appellant.**

**Appellate Case No. 2012–213481.**

**No. 27413.**

Supreme Court of South Carolina.

Heard April 2, 2014.
Decided July 16, 2014.

74

Appellate Defender Robert M. Pachak, of Columbia, for Appellant.

Attorney General Alan M. Wilson and Assistant Attorney General Mark R. Farthing, both of Columbia, for Respondent.

Justice KITTREDGE.

In this direct appeal from an adjudication of delinquency in family court, Appellant assigns error to the denial of his motion for a jury trial in a family court juvenile proceeding. Because there is no constitutional right to a jury trial in a family court juvenile proceeding, we affirm.

## I.

In August 2012, Appellant, then sixteen years of age, was charged with possession of marijuana. The matter was referred to the family court, where by way of petition, the case was presented to the court. At the adjudicatory hearing, Appellant moved for a jury trial, claiming that he was entitled to a jury trial under the United States and South Carolina Constitutions. The family court denied Appellant's motion.

The hearing consisted of the officer's testimony, explaining his foot pursuit of Appellant. During the pursuit, Appellant removed items from his pocket and discarded them. After Appellant was detained, three plastic baggies containing marijuana were retrieved from the area where Appellant had placed the items. Appellant testified, denying any knowledge of the drugs. The family court adjudicated Appellant delinquent and ordered that Appellant spend six consecutive weekends at the Department of Juvenile Justice, complete an alternative educational program, and continue with his prior probation [1] for a period of time not to exceed his eighteenth birthday or until he obtained a G.E.D. Appellant filed an appeal, which we certified pursuant to Rule 204(b), SCACR.

## II.

The South Carolina Children's Code provides that "[a]ll cases of children must be dealt with as separate hearings by the court and without a jury." S.C.Code Ann. § 63–3–590 (2010). The family court rules are in accord. *See* Rule 9(a), SCRFC ("All hearings in the family courts shall be conducted by the court without a jury."). Appellant contends this statute and family court rule violate his right to a jury trial pursuant to the federal and state constitutions.

---

1. Appellant was on probation for contempt and violation of a school attendance order.

 "This Court has a very limited scope of review in cases involving a constitutional challenge to a statute." *State v. Harrison*, 402 S.C. 288, 292, 741 S.E.2d 727, 729 (2013) (citing *Joytime Distrib. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 651 (1999)). "All statutes are presumed constitutional and will, if possible, be construed so as to render them valid." *Id.* at 292–93, 741 S.E.2d at 729 (citing *Davis v. Cnty. of Greenville*, 322 S.C. 73, 77, 470 S.E.2d 94, 96 (1996)). "A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear beyond a reasonable doubt." *Id.* at 293, 741 S.E.2d at 729 (citing *Westvaco Corp. v. S.C. Dep't of Revenue*, 321 S.C. 59, 62, 467 S.E.2d 739, 741 (1995)). The party challenging the constitutionality of the statute has "the burden of proving the statute unconstitutional." *State v. Jones*, 344 S.C. 48, 58, 543 S.E.2d 541, 546 (2001) (citing *State v. Bouye*, 325 S.C. 260, 265, 484 S.E.2d 461, 464 (1997)).

## A.

 We turn to the United States Supreme Court to resolve Appellant's federal constitutional challenge. In *McKeiver v. Pennsylvania*, in a plurality opinion, six members of the United States Supreme Court agreed that pursuant to the federal constitution, juveniles are not constitutionally entitled to a jury trial in adjudication proceedings. 403 U.S. 528, 530–57, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). We find no authority, and Appellant cites none, supporting his position. Appellant has not overcome the presumption of constitutionality regarding section 63–3–590. As a result, we reject Appellant's argument that the federal constitution guarantees him a right to a jury trial in a South Carolina family court juvenile delinquency proceeding.

## B.

 In examining Appellant's challenge pursuant to the South Carolina Constitution, we begin with the constitutional guarantee to a jury trial, Article I, section 14:

The right of trial by jury shall be preserved inviolate. Any person charged with an offense shall enjoy the right to a speedy and public trial by an impartial jury . . . .

S.C. Const. art. I, § 14. Appellant claims that the phrase "[a]ny person charged with an offense" supports his claim that he is entitled to a jury trial since juveniles are "persons" under South Carolina law[2] and the Children's Code refers to juvenile charges as "offenses."[3] Appellant acknowledges, however, that the right to a jury trial under Article I, section 14 turns on whether a right to a jury trial was in existence at the time the Constitution was enacted. Indeed, this provision "securing the right of trial by jury, [is] to be read in the light of the law existing at the adoption of the constitution. [It was] not designed to *extend* the right of trial by jury, but simply to *secure* that right as it then existed." *City Council of Anderson v. O'Donnell,* 29 S.C. 355, 367, 7 S.E. 523, 528 (1888) (emphasis added). Thus, "[t]he right to a trial by jury is guaranteed in every case in which the right to a jury was secured at the time of the adoption of the Constitution in 1868." *Mims Amusement Co. v. S.C. Law Enforcement Div.,* 366 S.C. 141, 149, 621 S.E.2d 344, 348 (2005) (citing *Medlock v. 1985 Ford F-150 Pick Up,* 308 S.C. 68, 70–71, 417 S.E.2d 85, 86 (1992)). "The right to a jury trial [also] encompasses forms of action that have arisen since the adoption of the Constitution in those cases where the later actions are of like nature to actions which were triable at common law at the time of the adoption of the Constitution." *Id.*

Under the common law in existence at the time of the adoption of the South Carolina Constitution, juveniles were criminally prosecuted in a manner similar to adults and were entitled to the right to a jury trial. *See, e.g., State v. Coleman,* 54 S.C. 162, 162–63, 31 S.E. 866, 866 (1899) (criminal prosecution of a child younger than fourteen); *State v. Toney,* 15 S.C. 409, 409–14 (1881) (appeal of a conviction for malicious

---

**2.** *See, e.g.,* S.C.Code Ann. § 63–1–40(1) (2010) (generally defining "child" as a "person under the age of eighteen" in the context of the South Carolina Children's Code); *id.* § 63–19–20(1) (2010) (defining "child" or "juvenile" to mean "a person less than seventeen years of age" in the context of the South Carolina Juvenile Justice Code).

**3.** *See, e.g.,* S.C.Code Ann. § 63–19–360(4) (2010) (providing for juvenile detention services for "juveniles charged with having committed a criminal offense who are found, after a detention screening or detention hearing, to require detention or placement outside the home pending an adjudication of delinquency or dispositional hearing").

trespass obtained at a jury trial). At that time, South Carolina followed the "rule of sevens" when criminally prosecuting children. *Dodd v. Spartanburg Ry. Gas & Elec. Co.*, 95 S.C. 9, 15, 78 S.E. 525, 528 (1913). "[A]t the common law, a child under seven years, is conclusively presumed incapable of committing any crime." *Id.* "Between seven and fourteen, the law also deems the child incapable; but only prima facie so; and evidence may be received to show a criminal capacity." *Id.* "Over fourteen, infants, like all others, are prima facie capable; and he who would set up their incapacity must prove it." *Id.*

In the early twentieth century, South Carolina began experimenting with alternative methods for handling juveniles charged with criminal offenses. *See, e.g.,* Act No. 73, 1917 S.C. Acts 132–35. This eventually resulted in the creation of the South Carolina Children's Code. *See* S.C.Code Ann. § 63–19–10 to –2460 (2010 & Supp.2013). Indeed, the current family court juvenile adjudication process was not in existence at the time our Constitution was enacted. Thus, the focus of our inquiry becomes whether the family court juvenile justice system is of "like nature" to juvenile criminal prosecutions at the time of the enactment of the Constitution. *Mims Amusement Co.*, 366 S.C. at 149, 621 S.E.2d at 348.

 The very nature of the juvenile system makes clear the family court juvenile adjudication is an inherently different process than a typical criminal prosecution. Indeed, "[t]he primary purpose of the juvenile process is to exempt an infant from the stigma of a criminal conviction and its attendant detrimental consequences." *In re Skinner*, 272 S.C. 135, 137, 249 S.E.2d 746, 746 (1978). "South Carolina, as *parens patriae,* protects and safeguards the welfare of its children. Family Court is vested with the exclusive jurisdiction to ensure that, in all matters concerning a child, the best interest of the child is the paramount consideration." *Harris v. Harris,* 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992) (citation omitted); *see also State v. Cagle,* 111 S.C. 548, 552, 96 S.E. 291, 292 (1918) ("The state is vitally interested in its youth, for in them is the hope of the future. It may therefore exercise large powers in providing for their protection and welfare.").

A brief overview of the family court juvenile justice system is illustrative. The Children's Code broadly defines the class

of people who may initiate juvenile adjudicatory proceedings, including parents, guardians, "any person who has suffered injury through the delinquency of a child, or an officer having an arrested child in charge." S.C.Code Ann. § 63–19–1020 (2010). Once a case has been initiated, a family court judge hears the matter and makes findings of fact. *Id.* § 63–19–1410(A) (2010). The family court can adjudicate the juvenile as a delinquent and has a wide variety of rehabilitative measures at its disposal, including probation, supervision, restitution, mentoring, treatment, or commitment to the Department of Juvenile Justice not to exceed the juvenile's twenty-first birthday. *Id.* Critically, "[n]o adjudication by the court of the status of a child is a conviction, nor does the adjudication operate to impose civil disabilities ordinarily resulting from conviction. . . . The disposition made of a child or any evidence given in court does not disqualify the child in a future civil service application or appointment." *Id.* § 63–19–1410(C).

██ These important distinctions between the family court juvenile adjudication process and the traditional criminal justice process demonstrate that the juvenile adjudication process in family court is not of a like nature or similar to the manner in which juveniles were criminally charged at the time the Constitution was enacted. As a result, the South Carolina Constitution does not entitle juveniles to a jury trial in family court adjudication proceedings.[4]

## III.

Because the federal and state constitutions do not entitle a juvenile to a jury trial in a family court delinquency proceeding, the judgment of the family court is affirmed.

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.

---

4. Our holding today is in accord with the prevailing view. *See* B. Finberg, Annotation, *Right to Jury Trial in Juvenile Court Delinquency Proceedings*, 100 A.L.R.2d 1241, at § 2[a] (1965 & Supp.2014) ("[I]t is now almost universally held that in the absence of a statute which provides for a jury trial in juvenile court delinquency proceedings, the individual charged with being a delinquent has no right, under the pertinent state or the federal constitution, to demand that the issue of his delinquency be determined by a jury.").