# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Interest of Kevin R., A Juvenile Under the Age of Seventeen, Appellant.

Appellate Case No. 2012-212655

―――――――――

Appeal From Richland County
The Honorable Robert E. Newton, Family Court Judge
The Honorable Gwendlyne Y. Smalls, Family Court Judge

―――――――――

Opinion No. 27430
Heard April 16, 2014 – Filed August 6, 2014

―――――――――

## AFFIRMED

―――――――――

Appellate Defender Susan Barber Hackett, of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia, for Respondent.

John S. Nichols, of Bluestein, Nichols, Thompson & Delgado, L.L.C., of Columbia; John D. Elliott, of Law Offices of John D. Elliott, P.A., of Columbia; and Bert G. Utsey, III, of Peters, Murdaugh, Parker, Eltzroth & Detrick, P.A., of Walterboro; for Amici Curiae, South Carolina Association for Justice, South Carolina Association of Criminal Defense Lawyers, and Lawyers

Committee for Children's Rights.

**JUSTICE BEATTY:** In a juvenile petition, the State charged Kevin R. ("Appellant") with possessing a weapon on school grounds in violation of section 16-23-430 of the South Carolina Code.[1] Prior to his adjudicatory hearing before a family court judge, Appellant moved for a jury trial on the ground the United States Constitution[2] and the South Carolina Constitution[3] guaranteed him the right to a jury trial. The judge denied the motion and proceeded to hear Appellant's case in a bench trial. Ultimately, the judge adjudicated Appellant delinquent and deferred sentencing until an evaluation of Appellant was completed. The sentencing hearing was conducted before a second family court judge, who sentenced Appellant to an indeterminate period of time not to exceed his twenty-

---

[1] S.C. Code Ann. § 16-23-430(A) (Supp. 2013) ("It shall be unlawful for any person, except state, county, or municipal law enforcement officers or personnel authorized by school officials, to carry on his person, while on any elementary or secondary school property, a knife, with a blade over two inches long, a blackjack, a metal pipe or pole, firearms, or any other type of weapon, device, or object which may be used to inflict bodily injury or death.").

[2] U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusations; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."); *see* U.S. Const. amend. XIV, § 1 ("All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.").

[3] S.C. Const. art. I, § 14 ("The right of trial by jury shall be preserved inviolate. *Any person charged with an offense* shall enjoy the right to a speedy and public trial by an impartial jury; to be fully informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to be fully heard in his defense by himself or by his counsel or by both." (emphasis added)).

first birthday. The judge then suspended the sentence and placed Appellant on probation until his eighteenth birthday.

On appeal, Appellant contends the family court judge erred in denying his motion for a jury trial. Recently, this Court held a juvenile does not have a constitutional right to a jury trial in adjudication proceedings. *In re Stephen W.*, Op. No. 27413 (S.C. Sup. Ct. filed July 16, 2014) (Shearouse Adv. Sh. No. 28 at 29). ("*Stephen W.*"). However, our decision in that case is not dispositive as we have now been presented with additional arguments raised by Appellant and the Amici Curiae. After consideration of these issues, we adhere to our decision in *Stephen W.* Accordingly, we affirm the ruling of the family court.

## I.    Factual / Procedural History

On October 4, 2011, Richland County Deputy Milton Clark, the school resource officer at Olympia Learning Center, received a call from an employee of the school. Based on this call, Deputy Clark removed Appellant, a sixteen-year-old student at the school, from a classroom and took him to a secure area to question him regarding his alleged possession of a weapon. Appellant admitted that he had a pocketknife in his sock. Deputy Clark then searched Appellant and found a pocketknife with a three-inch retractable blade.

On October 24, 2011, Deputy Clark filed a juvenile petition in Richland County family court, alleging Appellant was a delinquent for carrying a weapon on school grounds. The Honorable Robert E. Newton held an adjudicatory hearing on July 24, 2012. At the beginning of the hearing, Appellant's counsel moved for a jury trial on the ground Appellant was entitled to have a jury adjudicate his case based on the federal and state constitutions. Judge Newton denied Appellant's motion and proceeded with the bench trial. At the conclusion of the hearing, Judge Newton adjudicated Appellant to be delinquent for possessing a weapon on school grounds. Because Appellant was currently being evaluated at the Midlands Evaluation Center, Judge Newton delayed sentencing until the evaluation was completed.

On August 1, 2012, the Honorable Gwendlyne Y. Smalls held a hearing and ultimately sentenced Appellant to an indeterminate period of time not to exceed his twenty-first birthday. She then suspended the sentence and placed Appellant on probation, subject to certain conditions, until his eighteenth birthday. Appellant appealed to the Court of Appeals. This Court certified the case pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

## II. Discussion

### A. Arguments

#### 1. Appellant

Appellant contends section 63-3-590 of the South Carolina Code,[4] which provides in part that "[a]ll cases of children must be dealt with as separate hearings by the court and without a jury," violates the clear mandate of the South Carolina Constitution that "any person" charged with an "offense" shall be entitled to a jury trial. In support of this contention, Appellant asserts a juvenile is guaranteed the right to a jury trial because (1) a "child" is a "person" as defined throughout the

---

[4] Section 63-3-590 provides in full:

> All cases of children must be dealt with as separate hearings by the court and *without a jury*. The hearings must be conducted in a formal manner and may be adjourned from time to time. The general public must be excluded and only persons the judge finds to have a direct interest in the case or in the work of the court may be admitted. The presence of the child in court may be waived by the court at any stage of the proceedings. Hearings may be held at any time or place within the county designated by the judge. In any case where the delinquency proceedings may result in commitment to an institution in which the child's freedom is curtailed, the privilege against self-incrimination and the right of cross-examination must be preserved. In all cases where required by law, the child must be accorded all rights enjoyed by adults, and where not required by law the child must be accorded adult rights consistent with the best interests of the child.

S.C. Code Ann. § 63-3-590 (2010) (emphasis added); *see* Rule 9(a), SCRFC ("All hearings in the family courts shall be conducted by the court without a jury. Hearings shall be conducted in a judicial atmosphere, with the judge wearing a black judicial robe.").

South Carolina Code,[5] and (2) a juvenile petition charges a child with an "offense."[6]

As to the United States Constitution, Appellant acknowledges the United States Supreme Court's decision in *McKeiver v. Pennsylvania*, 403 U.S. 528 (1971), in which a plurality of the Court determined that juveniles are not constitutionally entitled to a jury trial in adjudication proceedings. However, Appellant challenges the propriety of *McKeiver* because "[i]n the forty years since *McKeiver*, the purposes and consequences of delinquency proceedings have changed." Specifically, Appellant asserts the South Carolina juvenile justice system is now much like the adult criminal justice system as the focus is punishment of the juvenile offender rather than rehabilitation. For example, Appellant notes that juveniles, who are adjudicated delinquent for enumerated sex offenses, must register for life as sex offenders.[7] Thus, Appellant maintains that

---

[5] *See, e.g.*, S.C. Code Ann. § 63-1-40(1) (2010) (generally defining "child" as a "person under the age of eighteen" in the context of the South Carolina Children's Code); *id.* § 63-19-20(1) (defining "child" or "juvenile" to mean "a person less than seventeen years of age" in the context of the South Carolina Juvenile Justice Code).

[6] *See, e.g.*, S.C. Code Ann. § 63-19-360(4) (2010) (providing for juvenile detention services for "juveniles charged with having committed a criminal offense who are found, after a detention screening or detention hearing, to require detention or placement outside the home pending an adjudication of delinquency or dispositional hearing"); *id.* § 63-19-810(B)(1) (requiring officer who takes a child into custody for violating a criminal law or ordinance to include in his or her report "the facts of the offense").

[7] *See, e.g.,* S.C. Code Ann. § 23-3-430(A) (2007) (stating, in part, "*Any person, regardless of age*, residing in the State of South Carolina who in this State has been convicted of, *adjudicated delinquent for*, pled guilty or nolo contendere to an offense described below, or who has been convicted, *adjudicated delinquent*, pled guilty or nolo contendere, or found not guilty by reason of insanity in any comparable court in the United States, or a foreign country, or who has been convicted, *adjudicated delinquent*, pled guilty or nolo contendere, or found not guilty by reason of insanity in the United States federal courts of a similar offense, or who has been convicted of, *adjudicated delinquent* for, pled guilty or nolo contendere, or found not guilty by reason of insanity to an offense for which the person was required to register in the state where the conviction or plea occurred, shall be required to register pursuant to the provisions of this article" (emphasis

"[l]ittle distinguishes delinquency proceedings from criminal prosecutions except the absence of a jury."

### 2. Amici Curiae

An amicus brief was filed on behalf of the South Carolina Association for Justice, the South Carolina Association of Criminal Defense Lawyers, and the Lawyers Committee for Children's Rights. In this brief, the Amici Curiae reiterate Appellant's arguments that a juvenile should be "allowed to demand" a trial by jury in family court because: (1) a juvenile was entitled to a jury trial at the time of the adoption of the South Carolina Constitution in 1868;[8] and (2) a "child" is a "person" as defined throughout the South Carolina Code and a juvenile petition charges a child with an "offense."

The Amici Curiae supplement Appellant's arguments with policy considerations that were raised during the oral argument of *Stephen W.* Initially, they contend the availability of a trial by jury for a juvenile will "result in more reliable verdicts" because there are several deficiencies in family court bench trials. Specifically, they claim juvenile adjudications are not always accurate or reliable because a family court judge, who is the sole fact-finder, may: (1) be inclined to find guilt due to his or her "professional bias" that "fault must be found and the youngster punished"; (2) apply an erroneous legal standard in determining whether an offense was committed; and (3) reach "erroneous conclusions based on insufficient evidence." Given the significant collateral consequences a juvenile faces as the result of an adjudication of guilt, they maintain a jury trial is necessary to ensure accuracy in fact-finding and to create a complete record for appellate review.

Although the Amici Curiae concede there would need to be certain procedural and logistical changes to accommodate a juvenile's request for a jury trial, they assert these changes are not insurmountable as evidenced by the states

---

added)); *id.* § 23-3-490(D)(1) (Supp. 2013) (providing for public disclosure of the identity of juvenile offenders who have been adjudicated delinquent for enumerated sex offenses).

[8] *See Verenes v. Alvanos*, 387 S.C. 11, 15, 690 S.E.2d 771, 773 (2010) ("The right to trial by jury is guaranteed in every case in which the right to a jury was secured at the time of the adoption of the Constitution in 1868." (quoting *Mims Amusement Co. v. S.C. Law Enforcement Div.*, 366 S.C. 141, 149, 621 S.E.2d 344, 348 (2005))).

that currently provide jury trials for adjudication proceedings.[9] For several reasons, they believe South Carolina family courts could join these jurisdictions with minimal disruption to the state's court system. They contend there would be few jury trials conducted as contested adjudications occur infrequently. In addition, they state the venue for conducting these trials "should be relatively simple" as the family court in each judicial circuit has access to a courtroom, either in circuit court or magistrate's court, which contains a jury box. Finally, they posit that assembling a venire for jury selection would not be difficult as the clerks of court throughout the state routinely summon jurors for jury duty in Common Pleas or General Sessions. Thus, jurors could be selected from these jury pools to serve on family court jury trials.

**B.     Analysis**

### 1.     Implication of *In the Interest of Stephen W.*

Recently, this Court held that neither the federal nor the state constitution requires a jury trial in juvenile adjudication proceedings. *In re Stephen W.*, Op. No. 27413 (S.C. Sup. Ct. filed July 16, 2014) (Shearouse Adv. Sh. No. 28 at 29). As noted in *Stephen W.*, the United States Supreme Court's decision in *McKeiver* definitively resolves Appellant's argument with respect to the federal constitution. *Id.* at 31. Moreover, "[m]ost jurisdictions that have dealt with the issue of the continued viability of *McKeiver* have determined that it is still settled law; that is, jury trials in juvenile proceedings may be provided *if a State chooses to do so*, but it is not a mandated right required by concerns of fundamental fairness under the Federal Constitution." *In the Interest of A. C.*, 43 A.3d 454, 461 (N.J. Sup. Ct. 2012) (emphasis added). *See generally* B. Finberg, Annotation, *Right to Jury Trial in Juvenile Delinquency Proceedings*, 100 A.L.R.2d 1241, § 2[a] (1965 & Supp. 2014) (collecting state and federal cases discussing whether a juvenile is entitled to a jury trial in juvenile court proceedings; recognizing that "the individual charged with being a delinquent has no right, under the pertinent state or federal constitution, to demand that the issue of his delinquency be determined by a jury").

---

[9]  A minority of states have enacted statutes that provide jury trials for juvenile adjudication proceedings. *See* Mass. Gen. Laws. ch. 119, § 55A (2010); Mich. Comp. Laws § 712A.17(2) (2011); Mont. Code Ann. § 41-5-1502(1) (2011); N.M. Stat. Ann. § 32A-2-16(A) (2011); Okla. Stat. Ann. tit. 10A, § 2-2-401 (2011); Tex. Fam. Code Ann. § 54.03(c) (2009); W. Va. Code § 49-5-6 (2011); Wyo. Stat. Ann. § 14-6-223(c) (2011) (amended on Mar. 10, 2014 regarding juror selection).

Furthermore, as analyzed in *Stephen W.*, the General Assembly has created a system for juveniles that is distinctly different from adult offenders based on the premise that "South Carolina, as *parens patriae*, protects and safeguards the welfare of its children." *Harris v. Harris*, 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992); *see State v. Pittman*, 373 S.C. 527, 647 S.E.2d 144 (2007) (noting state's continued recognition of *parens patriae* in juvenile proceedings). The continued recognition of the *parens patriae* doctrine distinguishes South Carolina from those jurisdictions that have found a juvenile is constitutionally entitled to a jury trial.

For example, the Supreme Court of Kansas held that juveniles have a constitutional right to a jury trial in juvenile offender proceedings. *In the Matter of L. M.*, 186 P.3d 164 (Kan. 2008). In so ruling, the court premised its analysis by stating that "the Kansas Legislature has significantly changed the language of the Kansas Juvenile Offender Code (KJOC)." *Id.* at 168. Specifically, the court noted these changes negated the rehabilitative purpose set forth in the KJOC, replaced nonpunitive terminology with criminal terminology similar to the adult criminal code, aligned the sentencing provisions with the adult sentencing guidelines, and removed "the protections that the *McKeiver* Court relied on to distinguish juvenile systems from the adult criminal systems." *Id.* The court explained that "[t]hese changes to the juvenile justice system have eroded the benevolent parens patriae character that distinguished it from the adult criminal system." *Id.* at 170. Unlike Kansas, South Carolina has retained the doctrine of *parens patriae* in juvenile proceedings. Thus, Appellant's reliance on *In the Matter of L. M.* is misplaced.

Moreover, the collateral consequences claimed by Appellant do not entitle a juvenile to a jury trial as the General Assembly has specifically stated that adjudication is not the equivalent of a conviction. *See* S.C. Code Ann. § 63-19-1410(C) (2010) ("No adjudication by the court of the status of a child is a conviction, *nor does the adjudication operate to impose civil disabilities ordinarily resulting from conviction*, nor may a child be charged with crime or convicted in a court, except as provided in Section 63-19-1210(6). The disposition made of a child or any evidence given in court does not disqualify the child in a future civil service application or appointment." (emphasis added)).

Additionally, any assertion that juveniles should be entitled to a jury trial because they are subject to registering as a sex offender if they are adjudicated delinquent for certain sex offenses is without merit as our appellate courts have held that registering as a sex offender is a civil, non-punitive consequence. *See In re Justin B.*, 405 S.C. 391, 747 S.E.2d 774 (2013) (affirming juvenile's guilty plea in family court for criminal sexual conduct with a minor, first degree and

concluding imposition of lifetime electronic monitoring was a civil obligation and not a punishment), *cert. denied*, 134 S. Ct. 1496 (2014); *In re Ronnie A.*, 355 S.C. 407, 585 S.E.2d 311 (2003) (holding requirement that a juvenile, who is adjudicated delinquent for committing criminal sexual conduct with a minor, first degree, to register as a sex offender is non-punitive and does not violate due process).[10] Accordingly, we reaffirm the analysis in *Stephen W.* that addressed the issues raised by Appellant in the instant case.

Our decision in *Stephen W.*, however, is not dispositive as we have now been presented with arguments raised by the Amici Curiae. Initially, we are not persuaded by the assertions of the Amici Curiae regarding the lack of reliability in family court juvenile proceedings and the changes that would be needed to accommodate jury trials in family court. Significantly, they offer no objective evidence that family court bench trials in juvenile proceedings are somehow less reliable than other family court proceedings or proceedings conducted as bench trials in the circuit or probate courts. In all of these contexts, a judge presides as the sole fact-finder regarding cases that implicate a person's liberty interest. *See, e.g.,* S.C. Code § 43-35-45(E) (Supp. 2013) (outlining procedure for family court's determination that someone qualifies as a "vulnerable adult"); *id.* § 44-17-580(A) (outlining procedure for probate court's determination regarding a person's involuntary commitment to a mental health facility).[11] Thus, in the absence of any

---

[10] Although the issue is not before the Court, we note the inconsistent positions of the General Assembly to limit the negative civil parameters of adjudication proceedings but permit the consequences of an adjudication to continue for the lifetime of one who is adjudicated delinquent for sex offenses. If this state retains the doctrine of *parens patriae* in juvenile proceedings, then the consequences of these proceedings should expire when the individual reaches the age of twenty-one years old. *See* S.C. Code Ann. § 63-19-1410(A)(5) (2010) (providing that commitment "must be for an indeterminate period but in no event beyond the child's twenty-first birthday").

[11] Some proceedings in probate court may be tried before a jury; however, these cases are extremely limited. *See* S.C. Code Ann. § 62-1-306(a) (Supp. 2013) ("If duly demanded, a party is entitled to trial by jury in any proceeding involving an issue of fact in an action for the recovery of money only or of specific real or personal property, unless waived as provided in the rules of civil procedure for the courts of this State. The right to trial by jury exists in, but is not limited to, formal proceedings in favor of the probate of a will or contesting the probate of a will.").

fundamental distinction,[12] we discern no basis on which to find that a jury trial is warranted in juvenile proceedings.

Moreover, judges are presumed impartial and if a juvenile believes a family court judge has "professional bias," the juvenile may move to recuse that particular judge. *See Patel v. Patel*, 359 S.C. 515, 524, 599 S.E.2d 114, 118 (2004) ("It is not sufficient for a party seeking disqualification to simply allege bias; the party must show some evidence of bias or prejudice."); *Reading v. Ball*, 291 S.C. 492, 494, 354 S.E.2d 397, 398 (Ct. App. 1987) ("When no evidence is presented other than claimed 'adverse' rulings by the judge, the judge is not required to recuse himself."); *see also* Canon 3(B)(5) of Rule 501, SCACR ("A judge shall perform judicial duties without bias or prejudice.").

Furthermore, a juvenile who objects to the adjudication procedure or ruling has several avenues of recourse as he or she may file an appeal, an application for post-conviction relief, or a petition for a writ of habeas corpus. *See* S.C. Code Ann. § 63-3-640 (2010) ("Post conviction proceedings, including habeas corpus actions, shall be instituted in the court in which the original action was concluded; provided, however, that the family courts shall also have original jurisdiction of habeas corpus actions if the person who is the subject of the action would otherwise be within the jurisdiction of the family court."); *id.* § 63-3-650 ("Any judge shall have the power to issue a writ of habeas corpus to produce any person under the age of seventeen in court where necessary.").

As to the changes that would be necessary to implement a juvenile's right to a jury trial, the Amici Curiae oversimplify what would be required. They contend jurors for a family court trial could be selected from a jury pool that has been summoned for the Court of Common Pleas or the Court of General Sessions. This procedure would defeat the General Assembly's intent to keep juvenile proceedings separate and distinct from adult proceedings. It would also create an inefficient and overlapping system where a circuit court judge qualifies a jury panel and then jurors are selected before a family court judge to serve on a juvenile case. Additionally, this procedure would result in increased expenditures for counties as more jurors would need to be compensated and staff employed.

---

[12] Arguably, the difference in the burdens of proof in the proceedings, i.e., beyond a reasonable doubt versus clear and convincing, constitutes a fundamental distinction. However, this distinction is not dispositive as bench trials are routinely conducted in the Court of General Sessions where the burden of proof is beyond a reasonable doubt.

Based on the foregoing, we hold that Appellant has not met his burden to prove that section 63-3-590 violates either the federal or state constitution.[13]  *See* 43 C.J.S. *Infant*s § 134 (Supp. 2014) ("Although a jury trial in a juvenile delinquency proceeding may not be a federal nor a state constitutional requisite, in the adjudicative stage of a state juvenile court delinquency proceeding, if, in its wisdom, any state feels that a jury trial is desirable, there is no impediment to its installing a system embracing that feature, but such is the State's privilege and not its obligation.").  Consequently, we adhere to our decision in *Stephen W.*

## 2.    Constitutional Concerns Beyond Adjudication Proceedings

While we find a decision to affirm the family court is correct as Appellant's arguments are confined to challenging a juvenile's inability to request a jury trial in *adjudication proceedings*, we recognize a state constitutional conundrum.  Under the plain terms of our state constitution, a juvenile charged with a criminal offense has an absolute right to a jury trial.  Although the General Assembly may prohibit a juvenile from exercising this right in juvenile adjudications, it cannot legislatively eliminate the right in its entirety.

As the law currently stands, the General Assembly has authorized only the State and the family court to initiate the transfer of a juvenile into a court where the case could be tried by a jury.  *See* S.C. Code Ann. § 63-19-1210(4)-(10) (2010) (providing circumstances transferring jurisdiction of a juvenile from family court to a "court which would have trial jurisdiction of the offenses if committed by an adult" based on determination by family court either on its own decision or following the State's request); 21 S.C. *Jur. Children & Families* § 102 (Supp. 2014) (discussing circumstances involving "transfer of a juvenile to adult court").  This procedure is arguably unconstitutional as a juvenile should be able to affirmatively exercise the right to have a jury trial if charged with an offense for which the family court could waive jurisdiction.  *See* 47 Am. Jur. 2d *Juvenile Courts* § 94 (Supp. 2014) ("There is no constitutional right to a jury trial in

---

[13]  *See State v. Ross*, 185 S.C. 472, 477, 194 S.E. 439, 441 (1937) ("A court should not declare a statute unconstitutional unless its invalidity is manifest beyond a reasonable doubt, and the burden to show its unconstitutionality rests upon the one making the attack.  It does not require citation of authorities to sustain this proposition, for our court has so often announced this principle, in cases which it has been called upon to decide the question of the constitutionality of certain statutes, that this principle has become axiomatic.").

juvenile delinquency proceedings and such right is purely statutory.  Some authority, though, holds that a juvenile has a state constitutional right to a jury trial, *or that a juvenile has a right to a jury trial if accused of an act which would be a crime if committed by an adult*." (footnotes omitted) (emphasis added)).[14]

Without question, the South Carolina Children's Code and its adjudication procedure emanate from the State's power and responsibility as *parens patriae*. The State's status as *parens patriae* is substantial and should not be easily dismissed.  Concomitant with this status is the responsibility not to arbitrarily abandon it without articulable good cause.  Given the significance of abdicating this role, this Court has adopted factors for a family court to evaluate before transferring a juvenile's case to the Court of General Sessions.[15]  Nonetheless, the

---

[14]  Although a juvenile may not initiate the waiver of jurisdiction, we note that he or she may appeal the waiver order or consent to the transfer.  *See State v. Rice*, 401 S.C. 330, 737 S.E.2d 485 (2013) (affirming juvenile's plea of guilty in general sessions court and finding that juvenile, by pleading guilty, waived any constitutional challenge to the family court waiver of jurisdiction); *State v. Lamb*, 374 S.C. 346, 649 S.E.2d 486 (2007) (affirming juvenile's conviction for murder and concluding court of general sessions had subject matter jurisdiction to try juvenile after the family court accepted juvenile's consent to transfer jurisdiction). However, these procedures do not equate to an absolute right to affirmatively request a jury trial.

[15]  This Court has stated that "[u]pon a motion to transfer jurisdiction, the family court must determine if it is in the best interest of both the child and the community before granting the transfer request." *State v. Pittman*, 373 S.C. 527, 558, 647 S.E.2d 144, 160 (2007).  "The family court must consider eight factors, as approved by the United States Supreme Court in *Kent v. United States*, 383 U.S. 541 (1966), in making this determination." *Id.* at 558-59, 647 S.E.2d at 160.  The factors are:

(1) The seriousness of the alleged offense.

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.

(3) Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

State's status as *parens patriae* cannot supplant a juvenile's immutable state constitutional rights.

The apparent tension between the State's power as *parens patriae* and a juvenile's state constitutional right to a jury trial must be reconciled. Reconciliation is found by recognizing that the two are not mutually exclusive and that they are in fact dual tracks for handling juvenile transgressions. Although a juvenile is not entitled to a jury trial in an adjudication proceeding, the juvenile should be permitted to remove his case from the family court to a court of competent jurisdiction where a jury trial may be conducted. However, when this election is made, the juvenile forfeits the benevolent treatment of the *parens patriae* adjudication proceeding.

### III.   Conclusion

After consideration of the issues raised by Appellant and the Amici Curiae, we adhere to our decision in *Stephen W.* Accordingly, we affirm the family court's denial of Appellant's motion for a jury trial in his adjudication proceedings.

---

(4) The prosecutive merit of the complaint.

(5) The desirability of trial and disposition of the entire offense in one court.

(6) The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

(7) The record and previous history of the juvenile, including previous contacts with law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation, or prior commitments to juvenile institutions.

(8) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available.

*Id*. at 559, 647 S.E.2d at 160.

**AFFIRMED.**

**HEARN, J., concurs. TOAL, C.J., concurring in part and dissenting in part in a separate opinion. PLEICONES, J., concurring in part and dissenting in part in a separate opinion in which KITTREDGE, J., concurs.**

**CHIEF JUSTICE TOAL**: I join the well-reasoned lead opinion as to Sections I; II(A)(1); II(A)(2); II(B)(1); and III. I decline to join Section II(B)(2) of the lead opinion and dissent therefrom.

**JUSTICE PLEICONES:** I concur in part and dissent in part. First, I agree that our decision in *Stephen W,*[16] is dispositive of the only issue properly before this Court: whether a juvenile is entitled to a jury trial in a family court delinquency proceeding. To the extent that the majority addresses matters raised only by the amicus curiae, I dissent. *See* Rule 213 SCACR.  I also disagree with any suggestion that a juvenile's "immutable right to a jury trial" requires the Court *sua sponte* create a right allowing the juvenile to waive his case from family court to general sessions. The purported "constitutional conundrum" results from the equation of a juvenile delinquency petition with a criminal charge, a misunderstanding that is wholly at odds with our analysis in *Stephen W.*  Further, were this new procedure indeed constitutionally mandated, then I do not understand why we would not remand this appeal to allow Appellant the opportunity to exercise his right to a jury trial in general sessions.

In my opinion, this case is controlled in its entirety by *Stephen W.* Accordingly, I respectfully dissent from any discussion beyond the issue raised by the Appellant, and would hold only that the family court order should be affirmed.

**KITTREDGE, J., concurs.**

---

[16] *In re Stephen W.,* Op. No. 27413 (S.C. Sup. Ct. filed July 16, 2014).